**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

JOHN REINHART, ANTHONY WENZEL, and
ROBERT ZIEGELMAN,

        Plaintiffs,

                                  Case No. _____

v.

                                  Hon._____

CITY OF BIRMINGHAM,

        Defendant

---

ALTIOR LAW, P.C.
Kenneth F. Neuman (P39429)
Stephen T. McKenney (P65673)
401 South Old Woodward Ave., Ste. 460
Birmingham, MI 48009
Phone: 248.594.5252
kneuman@altiorlaw.com
smckenney@altiorlaw.com
Attorneys for Plaintiff

---

**COMPLAINT AND JURY DEMAND**

Plaintiffs, John Reinhart, Anthony Wenzel, and Robert Ziegelman, for their complaint against defendant City of Birmingham state:

**PARTIES, JURISDICTION, AND VENUE**

1.     Plaintiff John Reinhart ("Reinhart") is an individual citizen of the state of Florida.

2.     Plaintiff Anthony Wenzel ("Wenzel") is an individual citizen of the state of Arizona.

3.     Plaintiff Robert Ziegelman ("Ziegelman") is an individual citizen of the state of Michigan.  (Collectively, Reinhart, Wenzel, and Ziegelman are "Plaintiffs").

4.     Defendant City of Birmingham ("Defendant" or the "City") is a local government located in Oakland County, Michigan.

5.     Plaintiffs' claims in this action arise under federal law, specifically the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*.

6.     Given that Plaintiffs' claim arise under laws of the United States, this Court has jurisdiction over the subject matter of this action consistent with 28 U.S.C. § 1331.

7.     Defendant is a local government located in the state of Michigan and within this judicial district.  Defendant is subject to personal jurisdiction in the state of Michigan. A substantial part of the events or omissions giving rise to the claim occurred in the state of Michigan in this judicial district.  Therefore, this Court is a proper venue for this action under 28 USC § 1391.

### GENERAL ALLEGATIONS

8.     Plaintiffs incorporate all other allegations by reference.

9.     Reinhart resides in the state of Florida, but he also maintains a home in Oakland County in the state of Michigan, which he lives in for part of the year.

10.    Reinhart, when he is staying in Michigan, regularly drives to downtown Birmingham because his office is located at 555 South Old Woodward Avenue, Birmingham, Michigan (the "555 Building").  Additionally, Reinhart, when he is staying in Michigan, regularly drives to downtown Birmingham to patronize several of the retail, dining, fitness and exercise facilities, and lifestyle establishments located on South Old Woodward Avenue between Brown Street and Landon Street.

11.    Reinhart is disabled.  He has three fractured vertebrae in his lower lumbar and a fractured thoracic vertebrae.  Reinhart has had back surgery on his sacroiliac, has had his hip replaced, and has had knee surgery.  Reinhart's injuries to his back, hip, and knee substantially limit his ability to walk.

12.     Consequently, Reinhart has a handicap parking permit he has used for over 25 years when he travels by vehicle.

13.     Sometimes, when Reinhart visits the retail, dining, fitness and exercise facilities, and lifestyle establishments located on South Old Woodward Avenue, including the Pilates studio located in the 555 Building, he parks in front of the Pilates studio on the north side of the 555 Building and he sometimes uses a walker to assist him walking from his car to the Pilates studio in the 555 Building.  When his sciatica nerve  flares up, Reinhart parks in a handicapped spot on the street or in an ordinary street parking spot as close to the Pilates studio as possible.  This allows him to travel a shorter distance to access the retail, dining, fitness and exercise facilities, and lifestyle establishments located on South Old Woodward Avenue, thus making those retail, dining, fitness and exercise facilities, and lifestyle establishments located on South Old Woodward Avenue accessible to him.

14.     Wenzel resides in the state of Arizona, but he also maintains a home in Oakland County in the state of Michigan, which he lives in for part of the year.

15.     Wenzel regularly drives to downtown Birmingham to visit Birmingham Ultimate Fitness located in the 555 Building.

16.     Wenzel has a disability.  He has arthritis in his back, which he treats with medication and physical exercise (at Birmingham Ultimate Fitness), but which substantially limits his ability to walk.  Wenzel's back injuries also cause him to experience a significant loss of balance, which also limits his ability to walk.  Wenzel also has Meniere's disease, which affects his balance and limits his ability to walk. Wenzel also has pain in his hip, which limits his ability to walk.

17.   Consequently, Wenzel has a handicap parking permit he uses when he travels by vehicle.

18.   When Wenzel visits the fitness and exercise facilities located on South Old Woodward Avenue, he parks (when available) in a handicapped spot on the street or in the closest spot to the building.  While Wenzel can tolerate short walks of a block or less, he cannot walk more than a block and a half because of his disability.  Parking close to the Birmingham Ultimate Fitness in the 555 Building allows him to travel a shorter distance to access the fitness and exercise facilities, thus making the fitness and exercise facilities located on South Old Woodward Avenue accessible to him.  Without close-by street parking, Wenzel cannot access Birmingham Ultimate Fitness.

19.   Ziegelman lives in Birmingham, Michigan.  Ziegelman regularly drives to downtown Birmingham because his office is located in the 555 Building.  Additionally, Ziegelman frequently drives to downtown Birmingham to patronize the CVS Pharmacy, the Phoenicia restaurant, and other businesses on South Old Woodward Avenue.

20.   Ziegelman is disabled.  He has  had two hip operations, which substantially limit his ability to walk.

21.   Consequently, Ziegelman has a handicap parking permit he uses when he travels by vehicle.

22.   When Ziegelman goes to his office (which he typically does seven days per week) and he has something to drop off or pick up from his office, he will park in a handicapped space or other street parking space close to the 555 Building, so that he does not have to walk far with whatever he is carrying.

23. When Ziegelman visits Phoenicia or the CVS Pharmacy on South Old Woodward, he parks (when available) in a handicapped spot on the street.  If no handicap spot is available, Ziegelman parks in an ordinary spot close to the CVS Pharmacy or Phoenicia.  This allows him to travel a shorter distance to access these establishments, thus making those establishments accessible to him.

24. Prior to May 1, 2022, on South Old Woodward Avenue between Brown Street and Landon Street, there were eight existing handicapped parking spaces out of a total of 180 existing parking spaces.

25. On or about May 1, 2022, the City commenced a massive construction project to re-construct the roadway and sidewalks on South Old Woodward Avenue between Brown Street and Landon Street (the "Project").

26. The tangible and physical work on the Project started on or about May 1, 2022 and is currently ongoing.

27. During construction, the City has installed temporary parking in the area of the Project, but none of this temporary parking is designated handicapped parking.

28. The area in which the City is constructing the Project contains dozens of retail, dining, fitness and exercise facilities, and lifestyle establishments.

29. The area in which the City is constructing the Project contains many retail, dining, fitness and exercise facilities, and lifestyle establishments, which are specifically patronized by individuals, like Plaintiffs, with disabilities, including: CVS Pharmacy, The Birmingham Pub, Phoenicia, several medical offices in the 555 Building, Birmingham Ultimate Fitness, Justin's Workout Studio, 555 Fitness Studio, Studio M Pilates, and Community Yoga Studio.

30.    In its planning process for the Project, the City never asked the owners of these businesses how removing street parking would affect their disabled customers. Likewise, the City never solicited input from the owners of these businesses about the impact the Project would have on their disabled patrons.

31.    In fact, the area in which the City is constructing the Project, is one of the only places in the City zoned for fitness and exercise facilities, many of which are patronized by people (like Plaintiffs) that have disabilities and seek treatment for those disabilities.

32.    The Project, once completed, will, eliminate 64 street parking spaces on South Old Woodward Avenue between Brown Street and Landon Street.

33.    The Project, once completed, will eliminate one handicap parking spot on South Old Woodward Avenue between Brown Street and Landon Street.

34.    The Project, once completed, will remove most of the street parking spots that are closest to the buildings occupied by the retail, dining, fitness and exercise facilities, and lifestyle establishments located on South Old Woodward Avenue.  Most of the remaining parking will be on the south end of the Project, which is not close to these retail, dining, fitness and exercise facilities, and lifestyle establishments.

35.    Given that each of the Plaintiffs has a disability that substantially limits their ability to walk, Plaintiffs currently rely on street parking, including handicapped parking, close to the retail, dining, fitness and exercise facilities, and lifestyle establishments to access those establishments by making the walk from street parking to the retail, dining, fitness and exercise facilities, and lifestyle establishments as short as possible.

36.    In fact, as currently proposed to be constructed, Wenzel believes the street parking spaces are so far away from Birmingham Ultimate Fitness that he will be unable to attend exercise classes there for treatment of his back pain.

37.    Further, street parking demand in the area of the Project is certain to increase when a massive four-story, 55,000 square foot, retail and dining establishment, which is currently under construction, opens 2023.  The increased demand for parking caused by the new development and the decreased availability of parking caused by the City's decision to eliminate 64 street parking spaces (and one handicapped parking space) in the Project will make finding available parking and accessing the Project area significantly more difficult, or impossible, for disabled people (like Plaintiffs). Likewise, the demand for accessible parking for those (like Plaintiffs) with limited ability to walk is likely to increase given the aging of the population as a whole.

38.    The City has stated that the reduction in the number of parking spaces in the Project is a result of its obligation to comply with the ADA, claiming that because ADA-compliant handicapped parking spaces are larger than the existing handicapped parking spaces, there will be fewer parking spaces.  This explanation, however, is a red herring.  In truth, if it were the case that the elimination of parking spaces were due to the increased size of handicapped spaces, there would not be a reduction in 64 overall parking spaces and 1 handicapped parking space – that number would be significantly lower.

39.    Rather, the City has eliminated 64 parking spaces in the Project and chosen not to replace them because it believes that creates a more visually appealing Project. Indeed, on several occasions elected City officials have stated that the goal of the

Project is to enhance the aesthetics of South Old Woodward Avenue. As much as the City Commission would like to, aesthetics cannot take priority over the needs of disabled.

40. By way of example, and not limitation, the City has configured the Project in such a manner that it moves the existing bus stop from Bowers Street onto South Old Woodward Avenue. Doing so is part of an aesthetic improvement, which has as a consequence the loss of several street parking spots. Plaintiffs (and other disabled people) routinely use these parking spots, which currently exist, to access retail, dining, fitness and exercise facilities, and lifestyle establishments located on South Old Woodward Avenue.

41. Relocation of the bus stop also means moving it to Old Woodward Avenue in front of the 555 Building which is where disabled people and patients of the medical practices in the 555 Building are routinely dropped off and picked up for access to the 555 Building. Handicapped accessible vans cannot access the parking structure at the 555 Building because the height of the van is in excess of six-feet, six-inches, thus, these vehicles must use the area directly in front of the 555 Building to drop off and pick up disabled people and patients of the medical practices. Relocation of the bus stop will eliminate the closest and safest location for disabled people and other patients of the medical practices in the 555 Building to be dropped off and picked up.

42. The decision to eliminate street parking and make access to the retail, dining, fitness and exercise facilities, and lifestyle establishments on South Old Woodward Avenue more difficult was intentional on the part of the City and directly aimed at forcing people (including disabled people, like Plaintiffs) to walk extended distances.

8

43.     As Birmingham City Commissioner Clinton Baller stated at a public hearing on March
        14, 2022, the primary goal of the project is to change "the feel and the look" of South
        Old Woodward Avenue and to accomplish this goal parking must be reduced and "yes,
        people are going to have to walk twice as far."

44.     Expressing similar intent to discriminate against disabled people, Birmingham Mayor
        *Pro Tem* Pierre Boutros stated at a public meeting on April 11, 2022:  "This is not at
        all a rushed decision. This is not a mistake. Your patrons will get used to it. They're
        healthy. They look for wellness. I hope they like to walk."

45.     Likewise, Mayor Therese Longe stated: "When Center for Yoga was open, sometimes
        I had to park all the way down at Landon, I enjoyed the long walk."  Mayor Longe's
        quote indicates not only her knowledge of the lack of existing parking (a problem that
        will only be exacerbated by the increase in demand for parking caused by a new
        55,000 square foot retail building under construction and the massive reduction in
        parking under the Project) but also her knowledge that the only resolution for lack of
        parking is forcing people (including disabled people like Plaintiffs) to walk long
        distances to access South Old Woodward Avenue.

46.     Several other Birmingham City Commissioners have expressed similar intentions –
        the primary purpose of the Project is to improve the aesthetics of the area, and the
        City understands that the way the Project is designed requires people (including
        disabled people like Plaintiffs) to walk longer distances so the Project can be more
        aesthetically pleasing.

47.     Plaintiffs will be harmed if the Project is completed as planned with the removal of
        street parking spots and handicapped parking spots.

9

48.    Plaintiffs will be denied access to public facilities including access to street parking, sidewalks and access to businesses adjacent or proximate to parking and sidewalks because with the elimination of 64 street parking spaces there is not adequate parking or handicapped parking available in the Project.

49.    Plaintiffs cannot park elsewhere in the City and walk to the retail, dining, fitness and exercise facilities, and lifestyle establishments located on South Old Woodward Avenue, or otherwise walk to and enjoy the benefits of the Project, because of their respective disabilities.

50.    The City's design of the Project and the removal of street parking and handicapped parking is designed to discriminate against people, like Plaintiffs, who have a substantially impaired ability to walk.  The evidence for this discriminatory intent is in the public statements of City officials and in the design of the Project.

51.    Because the Project would significantly reduce street parking, including handicapped parking, at a time of increased demand, Plaintiffs will, because of their disability, be denied the benefits created by the Project and denied access to South Old Woodward altogether due to lack of available street parking.

52.    The damages that Plaintiffs will suffer, by not having access to the retail, dining, fitness and exercise facilities, and lifestyle establishments located on South Old Woodward Avenue or the public facilities created by the Project will be permanent, irreversible, and not adequately compensated by money damages alone.

## COUNT I
## VIOLATION OF 42 U.S.C. §12132

53.    Plaintiffs incorporate all other allegations by reference.

10

54.   Plaintiffs are all individuals who regularly patronize the retail, dining, fitness and exercise facilities, and lifestyle establishments located on South Old Woodward Avenue.

55.   To access the retail, dining, fitness and exercise facilities, and lifestyle establishments located on South Old Woodward Avenue, Plaintiffs must park close to those businesses, because they have disabilities which substantially limits their ability to walk.

56.   Consequently, Plaintiffs rely on and use existing street parking spaces located close to the retail, dining, fitness and exercise facilities, and lifestyle establishments located on South Old Woodward Avenue – including handicapped parking spaces – to access the sidewalks and other public facilities that abut and lead to the retail, dining, fitness and exercise facilities, and lifestyle establishments located on South Old Woodward Avenue.

57.   The City is a public entity under the Americans with Disabilities Act because it is a local government.

58.   The City, by designing, approving, and commencing work on the Project, has materially altered a public facility beginning on May 1, 2022.

59.   Because the Project eliminates 64 existing street parking spaces, including an existing handicapped parking space, the Project does not, to the maximum extent feasible, alter the public facility so that it is readily accessible and usable by individuals with disabilities.

60.   Instead, because the Project eliminates 64 existing street parking spaces, including an existing handicapped parking space, the Project makes the public facilities, including,

the road, parking, sidewalks and other public areas within the boundaries of the Project, significantly less accessible to Plaintiffs than they were before the Project was commenced, because of Plaintiffs' disability.

61.     Furthermore, with the increased demand for parking on South Old Woodward Avenue, given the 55,000 square foot retail and dining development there will not be less business on South Old Woodward Avenue, when the Project is complete; there will be more business on South Old Woodward Avenue when the Project is complete. There will be more parking needs on South Old Woodward Avenue and the City is eliminating, not expanding, parking on South Old Woodward Avenue making it inaccessible to the disabled.

62.     Specifically, the Project makes the public facilities less accessible because:

    a.      Plaintiffs have significantly fewer available street parking spaces in which to park their vehicles to access the public facilities and the retail, dining, fitness and exercise facilities, and lifestyle establishments located on South Old Woodward Avenue within the boundaries of the Project.

    b.      Plaintiffs have fewer handicapped parking spaces (many of which are located a great distance from the businesses Plaintiffs patronize) in which to park their vehicles to access the public facilities and the retail, dining, fitness and exercise facilities, and lifestyle establishments located on South Old Woodward Avenue within the boundaries of the Project. And

    c.      At the same time, the City has approved the construction of a massive retail shopping center on South Old Woodward, which will significantly increase the demand for street parking on South Old Woodward.

12

63.    Given that the concentration of parking is now located further away from the retail, dining, fitness and exercise facilities, and lifestyle establishments located on South Old Woodward Avenue, the public (including disabled people like Plaintiffs) will be forced to walk longer distances over the public facilities to access the retail, dining, fitness and exercise facilities, and lifestyle establishments located on South Old Woodward Avenue. For, Plaintiffs, because they have a substantially limited ability to walk, this makes the public facilities inaccessible to them.

64.    The City deliberately and intentionally removed parking knowing that it would:

    a.    Force people to walk farther to use the public facilities within the boundaries of the Project (as indicated by the Commissioners' own statements); and

    b.    make the retail, dining, fitness and exercise facilities, and lifestyle establishments located on South Old Woodward Avenue inaccessible for disabled people who cannot walk those extensive distances.

65.    The City's intentions are evidenced by the statement of Birmingham City Commissioner Clinton Baller, who stated at a public hearing that the goal of the project is to change "the feel and the look" of the South Old Woodward business district and to accomplish this goal parking must be reduced and "yes, people are going to have to walk twice as far."

66.    The City's intentions are evidenced by the statement of Birmingham Mayor *Pro Tem* Pierre Boutros who said, in a public hearing, that removing the parking spaces and handicapped parking spaces "is not a mistake. Your patrons will get used to it. They're healthy. They look for wellness. I hope they like to walk."

13

67.     The City's intentions are evidenced by the statement of Mayor Therese Longe stated: "When Center for Yoga was open, sometimes I had to park all the way down at Landon, I enjoyed the long walk."   Mayor Longe's quote indicates not only her knowledge of the lack of existing parking (a problem that will only be exacerbated by the increase in demand for parking and the massive reduction in parking under the Project) but also her knowledge that the only resolution for lack of parking is forcing people (including disabled people like Plaintiffs) to walk long distances to access South Old Woodward Avenue

68.     The City's intentions are evidenced by the statement of several other Birmingham City Commissioners have expressed similar intentions – the primary purpose of the Project is to improve the aesthetics of the area, and the City understands that the way the Project is designed requires people (including disabled people like Plaintiffs) to walk longer distances so the Project can be more aesthetically pleasing

69.     The City discriminated against Plaintiffs, on the basis of their disability, by intentionally designing the Project so that it promoted aesthetics at the expense of accessibility; so that it would force the public to walk more to access the retail, dining, fitness and exercise facilities, and lifestyle establishments located on South Old Woodward Avenue within the boundaries of the Project.

70.     The City engaged in other acts designed to make areas within the Project inaccessible to people, like Plaintiffs, with disabilities, through actions, omissions, or statements that may be identified during discovery in this action.

71.     The City's actions violate the requirements of the ADA as prescribed in 42 U.S.C. § 12132, and as the ADA has been implemented with rules authorized under the ADA.

72.     Plaintiffs have been damaged and will continue to be damaged by the lack of access

to public facilities created by the Project and by the discriminatory treatment from

the City.

WHEREFORE, Plaintiffs request that this Court: (1) award them all relief authorized

by 28 U.S.C. § 12133, including money damages, equitable relief, injunctive relief, punitive

damages, and/or the payment of their reasonable costs and attorney fees in bringing this

action; and (2) award any other relief that this Court deems appropriate, just, and equitable.

<div style="margin-left:50%;">

Respectfully submitted,

**ALTIOR LAW, P.C.**

/s/   Kenneth F. Neuman
Kenneth F. Neuman (P39429)
Stephen T. McKenney (P65673)
401 South Old Woodward Ave., Ste. 460
Birmingham, MI 48009
(248) 594-5252
kneuman@altiorlaw.com
smckenney@altiorlaw.com
Attorneys for Plaintiff

</div>

Dated: May 18, 2022

<div style="text-align:center;">

**JURY DEMAND**

</div>

Plaintiff's demand a trial by jury on all issues so triable.

<div style="margin-left:50%;">

Respectfully submitted,

**ALTIOR LAW, P.C.**

/s/ Kenneth F. Neuman
Kenneth F. Neuman (P39429)
Stephen T. McKenney (P65673)
401 South Old Woodward Ave., Ste. 460
Birmingham, MI 48009
(248) 594-5252

</div>

kneuman@altiorlaw.com
smckenney@altiorlaw.com
Attorneys for Plaintiff

Dated: May 18, 2022